**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LESTER LEE WHITE,**

      **Plaintiff,**

**vs.**                                         **Case No.: 8:13-CV-2891-T-17EAJ**

**CAROLYN W. COLVIN,[1]**
**Acting Commissioner of**
**Social Security Administration,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends that the Commissioner's decision be reversed and this case be remanded for further administrative proceedings.[2]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

_____

[1] The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security.  See Fed. R. Civ. P. 25(d).

[2] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

applicable legal standards.  See 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).   If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On May 17, 2010, Plaintiff filed an application for DIB and SSI, alleging disability beginning April 6, 2010. (T 104)  Plaintiff's application was denied initially and upon reconsideration, and an administrative hearing was held on July 16, 2012. (Id.)  Fifty-two years old at the time of the hearing, Plaintiff has a high school education and no past relevant work experience.  (T 114, 130)

On July 26, 2012, an ALJ denied Plaintiff's application.  (T 104-116)  The ALJ found Plaintiff had the following severe impairments: degenerative disc disease, spondylosis, arthritis, depression, posttraumatic stress disorder, and headaches. (T 106)  The ALJ also determined that Plaintiff's pulmonary fibroids, asthma, and gastroesophogeal reflux disease were non-severe. (T 106-107)  Plaintiff's impairments did not meet or medically equal one of the impairments listed in

2

20 C.F.R. Part 404, Subpart P, App. 1.  (T 107)  Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") to perform less than the full range of light work. Plaintiff could lift up to twenty (20) pounds occasionally and lift and/or carry ten pounds frequently and could stand and/or walk for up to six hours per eight-hour worday and sit for approximately six hours per eight-hour workday with normal breaks.  Plaintiff could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl. Plaintiff must avoid concentrated exposure to hazards and to irritants such as fumes, odors, dust, and gases.  Plaintiff was limited to unskilled work, defined as having an SVP 1 or 2, simple, routine, and repetitive tasks, and could have occasional interaction with the public. (T 108)

The ALJ found that Plaintiff had no past relevant work. (T 114)  But, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as hand packer, shoe packer, packing line worker, office helper, electrical and electronic equipment assembler, assembler electric accessories I, or subassembler. (T 115)   Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period.  (T 116)  On September 12, 2013, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (T 1-7)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

In challenging the ALJ's decision, Plaintiff raises the following grounds for relief: 1) the ALJ failed to properly weigh the medical evidence in determining Plaintiff's RFC, 2) the ALJ failed to

properly evaluate Plaintiff's subjective symptoms; and 3) the ALJ relied on flawed testimony from the VE.

A.      Plaintiff contends the ALJ failed to properly weigh the medical evidence, including the medical opinions, in formulating Plaintiff's RFC by substituting his opinion for that of three treating medical experts: Patricia Mossop, M.D. ("Dr. Mossop"),[3] Sylvia Moore, PA-C ("Physician Assistant Moore"), and Sharon P. Andrews, M.D. ("Dr. Andrews"). (T 610-615, 1302, 1421, 1445-52)[4]

When reviewing Plaintiff's record, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefore. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citation omitted). Specifically, whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178-79 (11th Cir. 2011).

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject the opinion. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982) (citation omitted). "Good cause" exists when (1) the treating physician's opinion is not bolstered

---

[3] The ALJ erroneously identified Dr. Mossop as "Dr. Mossol" in part of his opinion. (T 112)

[4] Plaintiff does not contest the weight given by the ALJ to the opinion of Theodore Mueller, M.D., ("Dr. Mueller"), the weight assigned to the opinions of the non-examining state agency consultants (David Guttman, M.D., Arthur Hamlin, Psy.D., and Sharon Ames-Dennard, Ph.D.), or the weight given to the Veteran's Administration records (including the opinion of Robert G. Moering, Psy. D., an examining clinical psychologist). (T 113-14, 858-68, 1218-30, 1249-50, 1299-1301)

by the evidence, (2) the evidence supports a contrary finding, or (3) the treating physician's opinion

is conclusory or inconsistent with the doctor's own medical records. <u>Phillips v. Barnhart</u>, 357 F.3d

1232, 1240-41 (11th Cir. 2004) (citation omitted).  Rejection of a treating physician's opinion must

be supported by clearly articulated reasons. <u>Phillips v. Barnhart</u>, 357 F.3d at 1241.

    <u>1.</u>    <u>Medical Opinions</u>

    a.    Dr. Mossop and Physician Assistant Moore

On July 2, 2010, Dr. Mossop and Physician Assistant Moore completed a Residual

Functional Capacity Questionnaire. (T 112, 611-12, 614-15)  They opined that Plaintiff could sit for

sixty (60) minutes at a time, could stand or walk for ten (10) minutes at a time, could sit for six (6)

hours in an eight-hour workday, could stand or walk for one (1) hour in an eight-hour work day,

would require unscheduled breaks two (2) to three (3) times for ten (10) minutes each throughout

the workday, and would "possibly" need to recline or lie down throughout the workday.  They also

identified side effects of Plaintiff's medications[5] and opined that Plaintiff would be likely to miss

work three or four times per month as a result of his impairments.[6] (T 112, 611, 614, 615)

The ALJ found that the RFC Questionnaire completed by Dr. Mossop and Physician

Assistant Moore contained significant internal inconsistencies and gave it little weight.  While they

identified the above described limitations, they also found that Plaintiff's prognosis was good and

his symptoms were seldom severe enough to interfere with the attention and concentration required

---

[5] The side effects identified were: hypertension, light-headedness, GI symptoms, dizziness, confusion, headache, and a drugged state. (T 611, 614)

[6] Although the ALJ stated that they opined Plaintiff would miss work three times per month, Dr. Mossop and Physician Assistant Moore actually checked the space for "three or four times a month." (T 112, 615)

to perform simple work-related tasks.  Further, the ALJ explained that it was not clear from the questionnaire whether Plaintiff actually suffered the medication side effects identified.  The ALJ also noted that the only symptom described was chronic frequent low back pain and that Plaintiff sought treatment only five times in 2010, indicating Plaintiff's symptoms were not as severe as reported in the questionnaire.  Further, the ALJ explained that the use of the term "possibly" to describe Plaintiff's need to lie down throughout the workday suggested uncertainty about Plaintiff's condition. (T 112, 611, 614, 615)

Separately, Physician Assistant Moore completed a Multiple Impairment Questionnaire, dated March 17, 2011.  Physician Assistant Moore diagnosed Plaintiff with major depression, degenerative joint disease of the spine, post traumatic stress disorder, and hypertension.  She described Plaintiff's lower back pain as a daily, chronic ache (rated an eight (8) on a scale from zero (0) to ten (10)) that was worse with prolonged sitting and was precipitated by movement, activity, or climbing stairs.  Plaintiff's pain was not completely relieved with medication without unacceptable side effects.  She also described his symptoms as low blood pressure and difficulty ambulating requiring use of a cane and attached an MRI of the lower spine in support of Plaintiff's degenerative joint disease diagnosis. (T 112-13, 1445-47)

As for exertional limitations, Physician Assistant Moore opined Plaintiff could sit for six (6) hours and stand or walk for two (2) hours in an eight (8) hour workday.  Additionally, it was necessary or medically recommended for Plaintiff not to sit continuously or stand or walk continuously in a work setting.  Plaintiff required hourly breaks from sitting, for five (5) to ten (10) minutes each, to get up and move around.  Plaintiff could lift or carry up to ten (10) pounds frequently and up to twenty (20) pounds occasionally, but could never lift or carry more than twenty

(20) pounds.  Plaintiff had no significant limitations doing repetitive reaching, handling, fingering or lifting, and no limitations using his upper extremities.  Plaintiff was capable of tolerating moderate stress. (T 113, 1447-50)

Physician Assistant Moore opined that Plaintiff's symptoms would likely increase if Plaintiff were placed in a competitive work environment, that emotional factors (i.e., Plaintiff's history of depression) contributed to the severity of Plaintiff's symptoms and limitations, and that Plaintiff's pain, fatigue or other symptoms were periodically severe enough to interfere with attention and concentration; Plaintiff could not do a full time competitive job that required the ability to keep the neck in a constant position on a sustained basis, but that Plaintiff might be able to do a part time job with restrictions or light duty.  Plaintiff was likely have good days and bad days and was likely to be absent from work more than three times per month. (T 113,1449-51)

The ALJ gave little weight to Physician Assistant Moore's opinion for these reasons: physician assistants are not considered acceptable medical sources, mental impairments were outside the area of Physician Assistant Moore's expertise, she did not provide support for her conclusion that Plaintiff would miss more than three (3) days of work per month, and she reported that she treated Plaintiff only once every six (6) months, suggesting Plaintiff was less limited than alleged. (T 112-13, 1445, 1451)  Further, the ALJ found Physician Assistant Moore's opinion inconsistent with an opinion she rendered in May 2009 reporting Plaintiff would miss work four (4) times each month and concluding Plaintiff could stand or walk for only one (1) hour per day. (T 112-13)

Although the ALJ described reasons for discrediting the opinions of Dr. Mossop and Physician Assistant Moore, the ALJ's determination to give their opinions little weight is not supported by substantial evidence.  The ALJ contrasted their opinion that Plaintiff's prognosis was

"good" with their opinion that Plaintiff could perform no work for eight hours a day. (T112) However, while their joint RFC assessment described Plaintiff's exertional limitations, need for unscheduled breaks, and likelihood of absenteeism, and while Physician Assistant Moore later explained Plaintiff might be able to perform a part time job with restrictions, neither Dr. Mossop nor Physician Assistant Moore opined that Plaintiff could do no work at all for eight hours a day. (T 611, 614-15, 1450)   Further, the ALJ did not otherwise explain how a prognosis of "good" is incompatible with the remainder of the limitations assessed by Dr. Mossop and Physician Assistant Moore.   Nor did the ALJ state that the joint RFC assessment was inconsistent with the medical record.

Additionally, the ALJ emphasized distinctions between a May 2009 RFC assessment completed by Physician Assistant Moore and later RFC assessments completed by Dr. Mossop and Physician Assistant Moore. (T 112-113, 161)  The ALJ explained that, in the May 2009 assessment, Physician Assistant Moore found Plaintiff would miss more than four days per month, but the later assessments found Plaintiff would only miss three days per month. (T 112-13)  However, the later assessments actually found Plaintiff would miss "three or four" and "more than three" days per month of work and are therefore not inconsistent with the May 2009 assessment. (T 615, 1451)

To the extent that the ALJ found Physician Assistant Moore did not provide medical support for her opinion that Plaintiff would miss more than three days per month, the ALJ's reasoning is not supported by substantial evidence. (T 113)  The questionnaire asked Physician Assistant Moore to "estimate, on the average, how often your patient is likely to be absent from work as a result of the impairments or treatment." (T 1451)  Physician Assistant Moore marked the line for "more than three times a month."  In the pages preceding that opinion, Physician Assistant Moore cited results

8

of objective testing, listed Plaintiff's symptoms, and described the nature, location, frequency, and precipitating factors of Plaintiff's pain.  She also noted that Plaintiff's symptoms would likely increase if he were placed in a competitive work environment and that Plaintiff was likely to have both good and bad days. (T 1445-51)

The fact that Plaintiff was only seen for treatment by Dr. Mossop five (5) times in 2010 and that Plaintiff was only seen by Physician Assistant Moore every six (6) months suggested to the ALJ that Plaintiff's symptoms were not as severe as reported by Dr. Mossop and Physician Assistant Moore. (T 112-13)  However, while the joint RFC assessment completed by Dr. Mossop and Physician Assistant Moore stated that Plaintiff had only been seen five (5) times in 2010, the assessment was completed July 2, 2010, indicating that Plaintiff was seen for treatment at Dr. Mossop's office five (5) times in six months. (T 612, 615)

Further, while Physician Assistant Moore described Plaintiff's frequency of treatment as every six (6) months, medical records indicate that Plaintiff actually saw Physician Assistant Moore at least eighteen (18) times between April 2009 and December 2010. (822-25, 830-33, 835-38, 841-45, 886-89, 897-900, 911-15, 937-40, 943-46, 950-53, 954-57, 963-67, 967-70, 975-82, 994-97, 1000-1003)  Such frequency of medical treatment lends itself to a different conclusion about the severity of Plaintiff's symptoms than would five (5) visits for treatment in an entire year or visits once every six (6) months.

As Plaintiff's treating physician, Dr. Mossop's opinion is entitled to considerable weight unless there is good cause to reject the opinion. Wiggins, 679 F.2d at 1389.  For the reasons stated above, the ALJ failed to articulate adequate good cause for rejecting Dr. Mossop's opinion. Although no controlling weight is owed to Physician Assistant Moore's opinion because she is not

a treating physician, <u>Broughton v. Heckler</u>, 776 F.2d 960, 961-62 (11th Cir. 1985) (per curiam), the opinion of a physician's assistant is an "other source" acceptable for consideration as part of the complete medical record. <u>See</u> 20 C.F.R. §§ 404.1513(a), (d)(1); 416.913(a), (d)(1).  As remand is required for further evaluation of Dr. Mossop's opinions, on remand, the ALJ should also consider the opinions of Physician Assistant Moore in light of the entire record.[7]

                    b.     Dr. Andrews

In February 2012, Dr. Andrews, Plaintiff's treating psychiatrist, opined that Plaintiff was unemployable due to his mental and physical conditions, including Major Depressive Disorder, severe without psychotic features, and chronic back pain and headaches that exacerbated his depression. (T 1421)   In April 2012, Dr. Andrews completed a Psychiatric/Psychological Impairment Questionnaire.  In addition to Major Depressive Disorder, Dr. Andrews diagnosed Plaintiff with history of substance dependence in remission.  Plaintiff had poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, social withdrawal or isolation, blunt, flat, or inappropriate affect, generalized persistent anxiety, and hostility and irritability. Further, Plaintiff required hospitalization or emergency treatment for his symptoms in the past and Dr. Andrews identified April 2006 as Plaintiff's last hospital admission date. (T 113, 1509-11)

Regarding Plaintiff's ability to sustain various mental abilities over a normal workday and

---

[7]  The ALJ also gave little weight to the opinion by Dr. Mossop and Physician Assistant Moore, signed September 7, 2011, that Plaintiff was not using drugs or alcohol and was disabled, explaining that the opinion was not supported with specific findings and did not describe what was meant by the term "disabled." (T 113, 1302) (The ALJ identified this opinion as that of Dr. Mossop; however, the form was signed by both Dr. Mossop and Physician Assistant Moore. (T 1302))  As disability determinations are reserved for the ALJ, <u>Cooper v. Astrue</u>, 373 F. App'x 961, 962 (11th Cir. 2010) (per curium) (unpublished), the ALJ's decision to give little weight to the September 7, 2011, opinion was appropriate and remand is not required for further consideration of that opinion.

workweek on an ongoing basis in a competitive work environment, Dr. Andrews opined that Plaintiff was moderately limited with regard to all areas of understanding and memory.  Plaintiff was also moderately limited with regard to his ability to carry out instructions, maintain concentration and attention for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance.  He was markedly limited in his ability to sustain an ordinary routine without supervision, to work in coordination with or proximity to others without being distracted by them, make simple work related decisions, to complete a normal workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  Regarding social interactions, Plaintiff was moderately limited in his ability to interact appropriately with the general public, ask simple questions or request assistance, and accept instructions and respond appropriately to criticism from supervisors.  Plaintiff was markedly limited in his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, as well as markedly limited in his ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  As for Plaintiff's ability to adapt, Dr. Andrews found Plaintiff moderately limited in his ability to be aware of normal hazards and take appropriate precautions, but markedly limited in his ability to respond appropriately to changes in the work setting, travel to unfamiliar places or use public transportation, and set realistic goals or make plans independently. (T 113-14, 1512-14)

Dr. Andrews explained that due to depression and anxiety, Plaintiff was unable to adapt easily to a work environment and experienced episodes of deterioration or decompensation in work settings causing him to withdraw from the situation and experience exacerbation of symptoms. Plaintiff's chronic medical problems limited his movement and exacerbated his depression, and his

11

mental and physical problems were severe, making Plaintiff incapable of tolerating even low levels of work stress. Plaintiff was likely to be absent from work more than three (3) times per month. Overall, Dr. Andrews described Plaintiff's prognosis as fair. (T 114, 1509, 1514-16)

The ALJ gave little weight to both of Dr. Andrews' opinions. As to the February 2012 opinion, the ALJ appropriately found that Dr. Andrews did not reference specific medical findings, address any specific limitations or abilities, or define "unemployable." See Cooper, 373 F. App'x at 962 ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor.").

Plaintiff argues that Dr. Andrews' April 2012 opinion is supported by the record, showing the following symptoms: dysphoric affect, low mood, nightmares, anhedonia, low energy, low self esteem, paranoia, anxiety, and intermittent hallucinations. (T 586, 711-12, 790, 900-01, 1251, 1268-69, 1341, 1493) Plaintiff also contends Dr. Andrews' opinion appropriately assessed Plaintiff's functioning in a competitive work environment and that the ALJ should not have assumed that Plaintiff's presentation at office visits while taking medication and not under stress was compatible with how Plaintiff would perform in a competitive work environment.

However, the reasoning behind the ALJ's determination to give little weight to Dr. Andrews' April 2012 opinion is supported by substantial evidence. The ALJ described Dr. Andrews' April 2012 opinion as inconsistent with Plaintiff's medical record, explaining that although Plaintiff's recent and remote memory and attention were repeatedly found intact, Dr. Andrews concluded Plaintiff was moderately limited with regard to understanding, memory, concentration, and persistence. Moreover, Dr. Andrews found Plaintiff moderately and markedly limited in social interactions, yet Plaintiff presented as pleasant and cooperative during examinations. (T 113-14,

12

1510, 1512-13, 44, 46, 790, 818, 846, 849, 901, 908, 923, 930, 946, 948, 962, 971, 983, 999, 1004, 1038, 1059, 1083-84, 1088, 1195, 1532)   The ALJ also found Dr. Andrews' opinion internally inconsistent, as she noted Plaintiff was markedly limited in his ability to make simple work decisions, but could manage his own finances.   Further, Dr. Andrews found Plaintiff markedly limited in his ability to travel to unfamiliar places or use public transportation, but Plaintiff reported that he used public transportation. (T 113-14, 141, 1513-14)

Additionally, the ALJ stated that, although Plaintiff reported depressed mood, poor sleep, symptoms of post-traumatic stress disorder, and anxiety, Plaintiff sought consistent mental healthcare through the Veteran's Administration, reported doing well on several occasions, Plaintiff's mental status symptoms were within normal limits (other than his mood and affect), no cognitive deficits were observed, and he denied problems with concentration. (T 109-10, 586, 604, 707-08, 710-11, 749, 790, 818, 826, 833-34, 840, 846, 1170, 1300-01, 1386)   And in 2011, although Plaintiff reported more severe mental symptoms of panic attacks, hallucinations, and memory problems, objective findings remained generally within normal limits, and Plaintiff's GAF scores were estimated at fifty-five (55) to sixty (60), indicating moderate symptoms.[8] (T 110, 1251, 1263-64, 1251-52, 1268-69, 1494, 1509, 1530-33, 1572-73)

As the ALJ articulated good cause to give little weight to Dr. Andrews' opinions, Plaintiff is not entitled to remand regarding Dr. Andrews' opinions.  This Court cannot reweigh the evidence

---

[8] The GAF scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without considering any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th ed. text rev. 2000).  A GAF score represents a subjective determination (based on a scale of 100 to 1) of a patient's overall level of functioning. Id.  A GAF score of 41–50 indicates serious symptoms; a score of 51–60 indicates moderate symptoms; and a score in the range of 61–70 indicates mild symptoms. Id. at 32–34.

as long as the ALJ's findings are supported by substantial evidence.  However, as stated above, remand is required for further evaluation of the opinions of Dr. Mossop and Physician Assistant Moore.

2.     Plaintiff's RFC

Plaintiff contends the ALJ erred in formulating Plaintiff's RFC by substituting his opinion for that of the treating medical experts.

The RFC describes the most a claimant can do in a work setting despite limitations resulting from the claimant's impairments.  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  It is based on consideration of the relevant medical and other evidence in the record.  Id.  "The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor." Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (per curium) (unpublished).

The ALJ twice stated that Plaintiff's RFC was supported by the weight of the opinion evidence. (T 112, 114)  However, as explained above, the ALJ gave little weight to the opinions of Dr. Mossop, Dr. Andrews, and Physician Assistant Moore. (T 112-14)  Further, the ALJ gave little weight to the opinions of an examining clinical psychologist (for failure to address specific work related limitations), a treating orthopedist (for failure to address exertional abilities), and Dr. Theodore Mueller, M.D., a treating psychiatrist (for failure to provide specific limitations). (T 113) The ALJ also gave little weight to the Veteran's Administration's summary of benefits indicating Plaintiff has a thirty percent service connected disability, as the Social Security standards of disability do not correlate the Veteran's Administration's standards of disability. (T 114)  Finally, the ALJ gave little weight to the opinions of the state agency medical consultants, concluding Plaintiff was more limited than their opinions determined. (Id.)

14

Overall, the ALJ gave little weight to every medical opinion he identified, so it is unclear how the weight of the opinion evidence supports Plaintiff's RFC. Accordingly, on remand, the ALJ shall specifically explain how Plaintiff's RFC is supported by the medical evidence of record, including the medical opinion evidence.[9]

### Conclusion

In recommending remand for further fact-finding on the issues identified above, this Court expresses no views as to the ultimate outcome. On remand, each side shall be afforded an opportunity to introduce additional evidence. The purposes of the Social Security Act will best be served by further consideration of Plaintiff's claims upon a more fully developed record. See generally Epps v. Harris, 624 F.2d 1267, 1275 (5th Cir. 1980).

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     The decision of the Commissioner be **REVERSED** and the case be **REMANDED** for further proceedings consistent with the forgoing; and

(2)     The Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file. Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993). The final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for

---

[9]   As remand is required for further evaluation of the opinions of the treating medical providers, Dr. Mossop and Physician Assistant Moore, and for an explanation of how Plaintiff's RFC is supported by the medical evidence (including medical opinion evidence) of record, the Court finds it unnecessary to reach the issues of whether the ALJ properly evaluated Plaintiff's credibility or relied on appropriate testimony from the VE, as the record could change on remand. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam).

attorney's fees under 42 U.S.C. § 406(b) must be filed no later than thirty (30) days after the date of the Social Security letter sent to the plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney fees.  See <u>In re Procedures for Applying for Attorney Fees under 42 U.S.C. §§ 406(b) and 1383(d)(2)</u>, No. 6:12-mc-124-CRL-22 (M.D. Fla. Nov. 13, 2012).

**Date: November 24, 2014**

ELIZABETH A JENKINS
United States Magistrate Judge

<u>**NOTICE TO PARTIES**</u>

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  <u>See</u> 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record

District Judge